1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BELFORD STRATEGIC INVESTMENT        No   C-04-4309 VRW
FUND, LLC and PRESIDIO GROWTH LLC
(Tax Matters Partner), et al,       Related to Case Nos C-04-
                                    4264, C-04-4310, C-04-4398,
        Petitioners,                C-04-4399, C-04-4964, C-05-
                                    1123, C-05-1996, C-05-2835,
        v                           C-05-3887

UNITED STATES OF AMERICA,                    ORDER

        Respondent.
_____/

        Petitioner Presidio Growth seeks readjustment of

partnership items under § 6226 of the Internal Revenue Code of 1986

(IRC) (26 USC § 6226).  On August 10, 2005, petitioner Presidio

Growth LLC ("Presidio") moved for partial summary judgment on the

following five issues:

        1) Whether Cherry Tree LLC ("Cherry Tree"), which generated
        large paper tax losses in the transactions at issue, was the
        "first actual borrower" of a premium loan;

        2) Whether the premium, interest obligation, prepayment, and
        breakage fee associated with the premium loan should be
        considered a liability;

        3) Whether a note received by Cherry Tree can be integrated
        with an interest rate swap executed by Belford Strategic
        Investment Fund ("Belford");

**4) Whether the partnership and premium loan at issue here were part of a sham transaction; and**

**5) Whether the anti-abuse regulation § 1.701-2 can be employed to unwind this transaction.**

Pet Mot SJ (Doc #24) at 1; Gov't 56(f)/Stay Mot (Doc #81-1 of 04-4264) at 4.

On September 2, 2005, the government moved in a related case, No C-04-4264, to stay all proceedings until the resolution of a criminal tax fraud trial in New York involving the principals of Presidio, John Larson and Robert Pfaff ("Larson and Pfaff").  Doc #74-1 in 04-4264.  The court denied without prejudice the government's motion to stay, subject to the government's renewal upon filing of an FRCP 56(f) affidavit.  Doc #78 in 04-4264.

On October 13, 2005, the government moved for relief under FRCP 56(f) and renewed its motion to stay the proceedings in all related cases.  Doc #81-1 in 04-4264.  Presidio opposed both motions on October 20, 2005, and the government filed a reply brief on October 27, 2005.  Doc #31; Doc #87-1 of 04-4264.  For the reasons stated below, the court GRANTS the government's motion for a stay on the terms hereafter described and DENIES AS MOOT the government's motion under FRCP 56(f).

I

"[A] court may decide in its discretion to stay civil proceedings * * * when the interests of justice seem [ ] to require such action." Keating v Office of Thrift Supervision, 45 F3d 322, 324 (9th Cir 1995) (omissions in original) (quoting SEC v Dresser Industries, Inc, 628 F2d 1368, 1375 (DC Cir 1980)) (internal quotation marks omitted).  When determining "whether to stay civil

proceedings in the face of parallel criminal proceedings," the Ninth Circuit has held that the court should consider "the extent to which the defendant's fifth amendment rights are implicated." <u>Federal Savings & Loan Insurance Corp v Molinaro</u>, 889 F2d 899, 902 (9th Cir 1989).  Additionally, the court should consider the following five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
>
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
>
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
>
> (4) the interests of persons not parties to the civil litigation; and
>
> (5) the interest of the public in the pending civil and criminal litigation.

<u>Keating</u>, 45 F3d at 324-25.

Keating and Molinaro, of course, arose out of somewhat notorious events involving savings and loan failures.  Petitioners in both cases claimed prejudice in defending civil actions because they were simultaneously defending or being investigated on criminal charges involving the same matters.  The court of appeals rejected both petitioners' contentions.  These holdings have little direct application in the present context, but the factors enumerated by the court are instructive.  This court looks to those factors here.

//

//

//

**United States District Court**
For the Northern District of California

1

**A**

2      The prejudice to Presidio of staying the case appears

3  largely to be monetary.  Tax payments have been made under protest

4  and refunds sought.  See, e g, Readj Pet (Doc #1-1).  A delay in

5  these proceedings then largely consists of a delay to petitioners

6  in receiving monetary relief to which they claim to be entitled.

7      This first factor does not weigh heavily in favor of

8  Presidio.  As Presidio acknowledges, "what we are dealing with now

9  is *Belford SIF* and a motion directed to specific issues; not every

10  BLIPS transaction ever entered into."  Doc #31 at 8:24-26 (emphasis

11  in original).  In its petition in this case, Presidio requests on

12  behalf of Belford that it "be refunded $38,000, together with

13  interest as allowed by law."  Readj Pet at 21:8.  Assuming Presidio

14  won this suit, a stay would delay when it could recoup this money.

15      Presidio's potential loss is limited in at least two

16  ways.  First, any refund that Presidio receives would likely come

17  with interest (to be sure the T-bill rate which may be less than

18  Presidio could earn, but interest nonetheless).  Further, the

19  relatively small sum at stake here diminishes Presidio's

20  opportunity cost.  And even considering the total requested refund

21  in the ten related cases -- $991,577.45 by the court's calculation

22  -- the cost to Presidio from receiving a potentially lower interest

23  rate seems minor when compared to the hundreds of millions of

24  dollars at stake in the BLIPS transactions in which Presidio

25  participated.

26      Second, as will be discussed in more detail below, the

27  stay that the court issues here lasts only until the firm trial

28  date of September 11, 2006, set in the parallel criminal

**4**

proceedings.  By tying the stay to commencement of the criminal trial, Presidio faces a potential delay of less than eleven months.

**B**

The government asserts that it will suffer three types of harm if this case is not stayed.  First, the government claims that its discovery will be hampered because the prosecutor in the criminal case is barred from sharing certain evidence with the government defendant here.  Doc #74-1 in 04-4264 at 10.  Next, the government argues that more liberal civil discovery rules will give petitioners an "unfair peek" at the evidence that will be used in the criminal prosecution.  Id at 14.  And finally, the government asserts that it cannot fully defend itself because several witnesses will invoke their Fifth Amendment privilege against self-incrimination if required to testify for this civil proceeding.  Id at 17.

The government's first argument is not persuasive.  It may be true that the prosecutor in New York may not share -- or may even be precluded from sharing -- certain evidence with the government lawyers in these civil cases.  But that does not justify staying this case.  If the prosecutors and government civil defendant are somehow barred from collaborating, then the defendant here will simply have to conduct its own discovery, like every other civil defendant must do.  In other words, the government defendant does not have a special right to the prosecutor's discovery or to the information used by a grand jury.  Any additional discovery obtained through a parallel criminal proceeding is a windfall, not an entitlement.

The government's next argument, by itself, has more force

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

but also is not completely persuasive.  Although the more liberal civil discovery rules might give the criminal defendants a peek at the evidence that would be used against them, those rules would seem to provide the government with the same advantage.  In other words, the government could use civil discovery to preview the evidence that the criminal defendants will use.  Even so, the court recognizes that the broad scope of civil discovery might affect the criminal trial's outcome.  And other courts have held that "[i]f a grand jury indicts a party for conduct that is the subject of a civil action * * * the court is obligated to prevent that criminal defendant from 'using parallel civil proceedings to gain premature access to evidence and information pertinent to the criminal case.'"  <u>Javier H v Garcia-Botello</u>, 218 FRD 72, 75 (WDNY 2003) (quoting <u>SEC v Doody</u>, 186 F Supp 2d 379, 381 (SDNY 2002)).  As such, civil discovery might be an unfortunate intrusion on the parallel criminal proceeding.

Moreover, allowing parties in the criminal trial to preview evidence via civil discovery may be more troublesome when combined with another problem highlighted by the government:  The government will not be able to obtain testimony from many relevant witnesses because they will invoke their Fifth Amendment privilege against self-incrimination.  Because of this privilege, the prosecutor's preview of the criminal defendants' case may be limited, unlike the criminal defendants' glimpse at the prosecutor's case.  And to the extent that the government defendant in this case depends more heavily on these witnesses than the petitioners do, the government defendant will receive less meaningful discovery.  Hence, these imbalances suggest that not

staying this case would prejudice the government in both parallel proceedings.

As a final note, the court agrees with Presidio that the government should have tried to depose more relevant witnesses rather than assuming that they would invoke their Fifth Amendment rights.  Doc #31 at 1:9-10.  Nonetheless, the government appears to have complied with the discovery schedule that was set in a case management conference on May 25, 2005.  Doc #44 of 04-4264.  And the court is sensitive to the government's concern that taking additional depositions might have impinged on the parallel criminal proceeding.  Hence, the court does not believe that the government has been unreasonably dilatory in its discovery efforts.

Accordingly, the court agrees with the government that it will face substantial prejudice if this case is not stayed.  The second factor, therefore, weighs strongly in the government's favor.

C

The third factor requires the court to consider judicial efficiency and management of the court's docket.  The government correctly states that the civil and criminal cases involve "the same transactions, the same witnesses, and similar issues."  Doc #74-1 of 04-4264 at 24:10-12.  Hence, the potential for duplicative judicial effort cannot be ignored:  "[B]y proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved * * *."  Maloney v Gordon, 328 F Supp 2d 508, 513 (D Del 2004) (quoting Javier H, 218 FRD at 75) (internal quotation marks omitted).

Additionally, resolution of the criminal case might greatly simplify or even moot many of the issues in this case. For example, because of the significant overlap between the criminal defendants and the petitioners here -- as noted earlier, Larson and Pfaff are Presidio's principals -- a criminal conviction might estop petitioners from pursuing this case. And regardless of who wins in New York, adjudication of the criminal trial will sharpen the issues and highlight the strengths and weaknesses of the parties' arguments, thus increasing the chances of settlement or dismissal of the case. Also, dispensing with the criminal case might make civil discovery more fruitful, because witnesses would be less likely to invoke their Fifth Amendment privilege against self-incrimination. The "mere possibility that a substantial amount of the court's work, if undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in proceeding with this civil action." <u>Golden Quality Ice Cream Co, Inc v Deerfield Specialty Papers, Inc</u>, 87 FRD 53, 57 (ED Pa 1980). On balance, however, this factor does not weigh heavily here because the parallel proceedings are in two different courts. The one proceeding does not impinge on the other court's calendar.

D

The fourth factor requires considering the interests of persons not a party to the civil litigation. The court notes that several non-party witnesses who were indicted in the criminal trial might well invoke their Fifth Amendment privilege against self-incrimination if required to testify in this civil proceeding. Doc #74-1 of 04-4264 at 19. To the extent that this would burden these witnesses' constitutional rights or impede discovery, the court

United States District Court

For the Northern District of California

1   agrees that this factor supports granting a stay here.

2                                    E

3          The final factor for the court to consider is the

4   public's interest in the pending civil and criminal litigation.

5   Presidio argues that the public's interest lies in this court

6   determining "what [do] these Internal Revenue Code sections

7   actually mean?"  Doc #75 of 04-4264 at 13:24.  The government

8   instead argues that the public's primary interest is in "effective

9   law enforcement and effective tax collection."  Doc #74-1 of 04-

10  4264 at 9:14.  Defendant's argument is, on balance, somewhat more

11  persuasive:  "[A] trial judge should give substantial weight to

12  [the public interest in law enforcement] in balancing the policy

13  against the right of a civil litigant to a reasonably prompt

14  determination of his civil claims or liabilities."  Twenty First

15  Century Corp v LaBianca, 801 F Supp 1007, 1010 (EDNY 1992) (quoting

16  Campbell v Eastland, 307 F2d 478, 487 (5th Cir 1962) (Wisdom, J)).

17  And the court recognizes that "[t]he public's interest in the

18  integrity of the criminal case is entitled to precedence over the

19  civil litigant."  Maloney, 328 F Supp 2d at 513 (quoting Javier H,

20  218 FRD at 75) (internal quotation marks omitted); see also In re

21  Ivan F Boesky Securities Litigation, 128 FRD 47 (SDNY 1989).

22  Accordingly, the court finds that the public interest is best

23  served by staying the civil matter so that the criminal case may

24  proceed unimpeded.

25                                    F

26         In sum, only one factor -- prejudice to the petitioners

27  if the case is stayed -- weighs slightly in favor of petitioners.

28  The other four factors are either inconclusive or support the

United States District Court

For the Northern District of California

                                     9

government's position, with the government burden and public
interest factors having the most weight.  On balance, these factors
suggest that the government's request for a stay should be granted.

II

Accordingly, the court GRANTS the government's motion for
a stay in this case and all related proceedings and DENIES AS MOOT
the government's FRCP 56(f) motion.  The court also DENIES without
prejudice Presidio's motion for summary judgment.  The stay will
expire on September 11, 2006, at which time Presidio may renew its
motion for summary judgment.  Additionally, the parties are
instructed to appear for a case management conference on September
12, 2006, at 9:00 AM, to update the court on the status of this
case and the parallel criminal proceeding.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge